Michele R. Stafford, Esq. (SBN 172509)
Matthew P. Minser, Esq. (SBN 296344)
SALTZMAN & JOHNSON LAW CORPORATION
1141 Harbor Bay Parkway, Ste. 100
Alameda, CA 94502
Telephone: (510) 906-4710
Email: mstafford@sjlawcorp.com
Email: mminser@sjlawcorp.com

Attorneys for Plaintiffs, Board of Trustees of the
San Diego Electrical Health and Welfare Trust

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE SAN DIEGO ELECTRICAL HEALTH AND WELFARE TRUST; ANDY BERG and JOHN SHERRELL, Trustees,<br><br>Plaintiffs,<br><br>v.<br><br>RONALD HOLTERHAUS, JR., aka RONALD PRIGGE, an individual; and MATTHEW ROCCO, an individual,<br><br>Defendants. | Case No.: 19-cv-00487-JM-WVG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: April 29, 2019<br>Time:           10:00 a.m.<br>Courtroom:  5D, 5th Floor<br>Judge;          Hon. Jeffrey T. Miller |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT at 10:00 a.m. on April 29, 2019, or soon thereafter as counsel may be heard, in the courtroom of the Honorable Judge Jeffrey T. Miller, located on the Courtroom 5D at the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, California, Plaintiffs will and hereby do move for a preliminary injunction pursuant to Fed. R. Civ. Proc. 65.  Plaintiffs seek a preliminary injunction restraining and enjoining Defendants Ronald Holterhaus, Jr. aka Ronald Prigge and Matthew Rocco from disbursing or dissipating any settlement proceeds received as a result of injuries sustained by Mr. Holterhaus on or about May 2, 2015.  Plaintiffs also seek for the Court to direct Defendants to provide clear answers to the following questions: Whether there has been or will be a settlement or settlements between Mr.

Holterhaus and any persons or entities regarding his injuries in an automobile accident occurring on or about May 2, 2015; the amount of such settlement, if any; whether settlement proceeds have been obtained and the current location of any such proceeds. This motion is made on the grounds that immediate and irreparable injury will result to Plaintiffs unless Defendants are so enjoined pending trial of this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiffs Board of Trustees of the San Diego Electrical Health and Welfare Trust et al., (collectively, the "Healthcare Trust") respectfully request this Court, pursuant to Federal Rule of Civil Procedure Section 65(a), to preliminarily enjoin Defendants Ronald Holterhaus, Jr., aka Ronald Prigge ("Mr. Holterhaus"), and Matthew Rocco ("Mr. Rocco"), an individual, from disbursing or dissipating any settlement proceeds received as a result of injuries sustained by Mr. Holterhaus on or about May 2, 2015. The Healthcare Trust has a right to reimbursement from any settlement proceeds under the terms of the San Diego Electrical Health & Welfare Trust Plan Document ("Plan Document") and a subrogation agreement signed by Mr. Holterhaus, and will be irreparably harmed if settlement proceeds are dissipated. Plaintiffs further request that the Court direct Defendants to provide threshold information on whether any settlement has been entered, in the event such information has not been provided by the time of the hearing on this motion.

### II.    FACTUAL BACKGROUND

**A. Defendant Ronald Holterhaus, Jr. Is a Participant to the Health Plan Operated by the Healthcare Trust**

The Healthcare Trust operates a health plan for current employees of employers who are bound to a collective bargaining agreement with the International Brotherhood of Electrical Workers (IBEW) Local 569 (hereinafter the "Plan"). (Complaint at ¶ 7.) (Dkt. #1.)

Defendant Ronald Holterhaus, Jr. is a Plan participant and is considered a Covered Person under the Plan. (*Id.* at ¶ 8.) As a Covered Person under the Plan, he is bound to the terms of the Plan Document. (*Id.* at ¶ 9.)

The Healthcare Trust has rights of subrogation and reimbursement in the event a Plan

participant or his/her dependent beneficiary is injured by a third party, as set forth under the Plan Document:

> **Third Party Claims**.
> *If a Covered Person receives benefits from this Trust for Bodily Injuries or illnesses sustained from the acts or omissions of any third party, the Trust shall have the right to be reimbursed in the event the Covered Person recovers all or any portion of the benefits paid by the Trust by legal action, settlement, or otherwise, regardless of whether such benefits were paid by the Trust prior to or after the date of any such recovery. The Covered person will not be entitled to receive any benefits for such expenses under this Trust unless he executes a Subrogation Agreement...*
>  (See Exhibit B to Complaint)

The Healthcare Trust requires participants and/or beneficiaries sign a subrogation-reimbursement agreement ("Subrogation Agreement") in order to receive coverage for treatment of injuries caused by a third party. The Plan Document sets forth the terms of the subrogation-reimbursement agreement, and states in part:

> **Reimbursement to Trust.**
> *To authorize reimbursement to the Trust to the extent of all benefits paid by this Trust as a result of such injuries immediately upon obtaining any monetary recovery from any party or organization whether by action at law, settlement or otherwise by virtue of executing a Subrogation Agreement, with the understanding that any and all monies recovered from any third party are to be deposited in an exclusive bank account to be established in joint name including the Trust, or into a representing attorney's client trust account. No monies shall be withdrawn from such account without express written acknowledgment and authorization from this Plan's Administrator. Any payment received by the participant or the participant's eligible dependents is subject to a constructive trust. Any third-party payment received by the participant or the participant's eligible dependents must be used first to provide restitution to this Plan to the full extent of the benefits paid or payable under this Plan.*
>  (See Exhibit B to Complaint)

B. **Defendant Holterhaus Is Injured in an Accident and Retains Defendant Rocco for an Personal Injury Action**

On or about May 2, 2015, Mr. Holterhaus and his minor child, suffered injuries from an automobile accident. (*Id.* at ¶ 10.)

The Holterhauses retained Mr. Rocco and the Law Office of Matthew P. Rocco to serve as their counsel. By and through their counsel, on behalf of his minor child, Mr. Holterhaus filed a

personal injury action in California Superior Court for San Diego County (Case No. 37-2016-00013664) (the "Superior Court Action") against a third party alleged to have caused or contributed to the injuries of Mr. Holterhaus' minor child. (Complaint at ¶ 13.)

### C. The Healthcare Trust Pays $49,999.16 for Defendant Holterhaus' Medical Costs, and Defendant Holterhaus Signs Subrogation Agreement

The Healthcare Trust was billed $92,799.13 for medical costs incurred by Mr. Holterhaus; the Trust Fund paid $49,999.16 in response to the claims billed. (*Id.* at ¶ 14.)

On or about December 15, 2016, Mr. Holterhaus signed the Healthcare Trust's Subrogation Agreement. (*Id.* at ¶ 16, Exhibit C to Complaint.)

The Subrogation Agreement requires that, upon monetary recovery, that the money will be deposited in a separately identified bank account as mutually agreed upon by Mr. Holterhaus and the Healthcare Trust or into the attorney's client trust account. No money recovered will be withdrawn without express written authorization from the Healthcare Trust. The Healthcare Trust shall have a lien on such funds in accordance with the Reimbursement Schedule. If legal action is necessary to enforce the Subrogation Agreement, the Healthcare Trust shall be entitled to reimbursement for attorney's fees and Court costs incurred. (*Id.* at 17.)

### D. The Healthcare Trust Demands Recovery of Medical Costs Paid on Defendant Holterhaus' Behalf Pursuant to Subrogation Agreement

On or about December 19, 2017, the administrator for the Healthcare Trust sent a demand letter via certified mail, first class mail and email to Mr. Rocco in the amount of $57,042.02, and maintaining that recovery would be in the amount specified by the Subrogation Agreement, a copy of which was enclosed. The Healthcare Trust requested documentation regarding the settlement, including the settlement agreement and total amount pa*Id.* The Healthcare Trust informed Mr. Rocco that upon receipt of any money pursuant to settlement, the Healthcare Trust should be notified and the money should be placed in a separate bank account or attorney trust account. (*Id.* at ¶ 20). (See Declaration of Matthew Minser ("Minser Decl."), Exhibit A.)

Counsel for the Healthcare Trust and Mr. Rocco exchanged letters, phone calls and emails over many months regarding the amount of the claims made by the Healthcare Trust, with the

Healthcare Trust reducing its demand to $49,999.16.  Mr. Rocco continued to demand proof of copies of checks from the Healthcare Trust to providers, with the Healthcare Trust responding that, with a few exceptions, such checks were not available because virtually all payments to service providers are issued electronically by Anthem.  (*Id.* at ¶¶ 21 – 31).

On or about September 17, 2018, counsel for the Healthcare Trust sent a letter via email, first class and certified mail to Mr. Rocco requesting the following information:

a.  the terms of any settlement agreement with a third party to resolve Mr. Holterhaus' claims, along with a copy of the settlement agreement;

b.  whether payments from other third parties were being pursued;

c.  whether any settlement proceeds have been deposited into a separate bank account, the location of such account and any disbursements from the account.  (*Id.* at ¶ 32.) (Minser Decl., Exhibit B.)

On or about March 7, 2019, counsel for the Healthcare Trust sent an email to Mr. Rocco requesting the information described in the Healthcare Trust's September 17, 2018 letter.  Counsel for the Healthcare Trust again provided a copy of the summary of payments made by the Healthcare Trust, which was initially provided to Mr. Rocco as part of the email made on or about February 22, 2018; Mr. Rocco has not identified additional discrepancies since that time.  The email also stated yet again that the Healthcare Trust does not maintain hard copies of the checks provided to the providers and that all Explanation of Benefits ("EOB's") have been sent to Mr. Rocco.  (*Id.* at ¶ 34).  (Minser Decl., Exhibit C.)

**At no time did Mr. Rocco inform Counsel for the Healthcare Trust whether, or if, any settlement has been reached for the injuries to Mr. Holterhaus, despite multiple requests from Counsel for the Healthcare Trust**.  (*Id.* at ¶ 36).

### III.     LEGAL STANDARD

To be granted a preliminary injunction, a plaintiff must show that: "[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Am. Trucking Assns. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.

2009). The purpose of a preliminary injunction is to "preserve[s] the status quo pending at least some discovery and further hearing on the merits." *Alliance for The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). Because a preliminary injunction can be granted early on during litigation, "the factual record under consideration at the preliminary injunction stage may differ materially from the fully developed factual record." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 876-77 (9th Cir. 2009).

When evaluating a motion for preliminary injunction, "a court employs a sliding scale when considering a plaintiff's showing as to the likelihood of success on the merits and the likelihood of irreparable harm." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 2012 U.S. Dist. LEXIS 13506, *15-16 (N.D. Cal. Feb. 3, 2012). Under the sliding scale approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies*, 632 F.3d at 1131 (9th Cir. 2011). Therefore an injunction should issue where there are "serious questions going to the merits" and where the balance of hardships sharply in plaintiffs" favor, provided that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id*. at 1132, 1135.

### IV.      ARGUMENT

The Healthcare Trust meets the necessary factors for entry of a Preliminary Injunction, after notice and hearing, against Defendants.

**1.      The Healthcare Trust is Likely to Succeed on the Merits of Its Claim for Reimbursement**

The Healthcare Trust is a Taft-Hartley Trust Fund created for the purpose of providing eligible employees, dependents and beneficiaries with healthcare and related benefits, and a self-funded plan subject to the Employment Retirement Income Security Act of 1974 ("ERISA"). ERISA § 502(a)(3) authorizes the Healthcare Trust to bring a cause of action to (i) enjoin any act which violates ERISA or the terms of the plan; or (ii) to obtain equitable relief to redress such violations or enforce ERISA or violates the terms of the plan. 29 U.S.C. § 1132(a)(3). Such relief includes imposition of an equitable lien or constructive trust. *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 362-64 (2006), citing *Barnes v. Alexander*, 232 US. 117, 123 (1914).

Much like the Plaintiff in *Sereboff*, the Healthcare Trust seeks equitable relief, including an equitable lien by agreement and if necessary, an order of restitution in order to enforce Plan terms. The San Diego Electrical Health & Welfare Trust Plan Document ("Plan Document") and the Subrogation Agreement, which Mr. Holterhaus signed, contains subrogation and reimbursement provisions that require a participant or beneficiary to reimburse the Healthcare Trust if a recovery is obtained from a third party or policy.

Mr. Holterhaus has violated the terms of the Plan Document and Subrogation Agreement in that he was injured by one or more third parties, had his medical expenses paid by the Healthcare Trust but now refuses to reimburse the Healthcare Trust from any settlement proceeds. The claims of Mr. Holterhaus' minor child were settled in the Superior Court Action. **Despite numerous requests, Mr. Holterhaus, through his counsel, has refused to even inform the Healthcare Trust whether a settlement has been reached regarding the potential claims of Mr. Holterhaus, or the location of any settlement proceeds, as required by the Subrogation Agreement**. Accordingly, the Healthcare Trust also seeks for the Court to direct Defendants to provide clear answers to the following questions: Whether there has been or will be a settlement or settlements between Mr. Holterhaus and any persons or entities regarding his injuries in an automobile accident occurring on or about May 2, 2015; the amount of such settlement, if any; whether settlement proceeds have been obtained and the current location of any such proceeds.

The Healthcare Trust simply wants to enforce the terms of the Plan Document and the Subrogation Agreement. These terms require Mr. Holterhaus to reimburse the Healthcare Trust for the amounts it paid for his medical expenses. Based on the terms of the Plan Document, the Healthcare Trust is entitled to reimbursement and Defendants must comply with the Plan's provisions and the Subrogation Agreement.

### 2. Absent Entry of Injunctive Relief, the Healthcare Trust is Likely to Suffer Irreparable Harm

Absent entry of injunctive relief, the Healthcare Trust is likely to suffer irreparable harm. Reimbursement by way of an equitable lien by agreement is "appropriate equitable relief" within the meaning of ERISA § 502(a)(3). *Montanile v. Board of Trustees of the National Elevator*

*Industry Health Benefit Plan*, 136 S. Ct 651 (2016) (Plan can file civil suits to obtain equitable relief to enforce plan terms). However, the Healthcare Trust cannot bring an action for equitable relief against the participants general assets under § 503(a)(3) when the participant dissipates the settlement on non-traceable items. *Montanile,* 136 S. Ct. at 655.

Once the settlement proceeds are disbursed, the Healthcare Trust is at grave risk of Mr. Holterhaus spending the proceeds on non-traceable items. Should that occur, the Healthcare Trust's ability to enforce its rights on the settlement proceeds is all but unenforceable. A Preliminary Injunction to preserve the status quo during the pendency of this action and thus prevent irreparable harm.

### 3. The Balance of Equities is in the Healthcare Trust's Favor

The choice before this Court is whether to grant a preliminary injunction after a hearing can be held or to wait until the merits of the Complaint have been resolved. Entry of a Preliminary Injunction only preserves the status quo; it does not improve upon the position of any of the Parties. Moreover, the proposed Preliminary Injunction only seeks to enjoin the Defendants from disbursing or otherwise dissipating $49,999.16 of the settlement proceeds. Because the proposed preliminary injunction is limited in scope, Defendants would suffer little harm if the Court were to grant the Healthcare Trust's Motion. The alternative is to deny the Healthcare Trust's Motion for entry of a Preliminary Injunction, which then allows Defendants opportunity and time in which to disburse or disseminate all of the settlement proceeds, potentially putting them out of reach of the Healthcare Trust. *See Montanile,* 136 S. Ct. at 659 (stating that a defendant's dissipation of settlement funds on nontraceable items eliminates the equitable lien). Accordingly, the balance of equities tips in the Healthcare Trust's favor.

### 4. An Injunction is in the Public Interest

Congress declared the purpose of ERISA to be:

It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the

Federal courts.

One of the appropriate remedies provided by Congress is the ability of a plan to seek equitable relief in order to enforce the Plan's terms. 29 U.S.C. § 1132(a)(3). Enforcement of Plan terms provides consistency in the administration of the plan in part by "establishing standards of conduct, responsibility and obligation of fiduciaries of employee benefit plans…" 29 U.S.C. § 1132. Doing so protects the interest of the Healthcare Trust's beneficiaries.

Enforcement of subrogation and reimbursement provisions contained in the Plan Document is in the public's interest because it is beneficial to ensuring stability of ERISA plans. Failing to enforce the Healthcare Trust's subrogation and reimbursement rights, as set forth in the Plan Document and Subrogation Agreement, when beneficiaries recover damages from third parties, substantially compromises the financial stability of the Healthcare Trust. Such instability would likely lead to a reduction in benefits and/or an increase in contributions that must be paid by plan contributors. Thousands of participants and beneficiaries rely on benefits provided by the Healthcare Trust. Their reliance would be misplaced if the Healthcare Trust could not obtain an injunction to recover settlement proceeds wrongfully withheld by participant and beneficiary under the Plan Document's reimbursement provisions. There is a strong public interest in preventing this outcome.

## V.  CONCLUSION

Under the precedent set by the United States Supreme Court, there is real, imminent and likely irreparable harm if Defendants are allowed to disburse and/or dissipate any settlement proceeds without reimbursing the Healthcare Trust.

//
//
//
//
//
//
//

**PLAINTIFFS' NOTICE OF MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES;  Case No.: 19-cv-00487-JM-WVG**

- 1 -

P:\CLIENTS\SDEWF\CASES\Ronald Holterhaus\Pleadings\Motions\Motion for Preliminary Injunction.doc

1  Entry of a Preliminary Injunction after a noticed hearing simply maintains the status quo until the
2  Court can review the evidence and consider the merits of the motions filed by the Parties.
3  Accordingly, the Healthcare Trust contends a preliminary injunction against Defendants is
4  appropriate in these circumstances.

Dated: March 19, 2019                    SALTZMAN & JOHNSON LAW
                                         CORPORATION

                                    By:  /S/Matthew P. Minser
                                         Matthew P. Minser
                                         Attorneys for Plaintiffs, Board of Trustees of the
                                         San Diego Electrical Health and Welfare Trust
                                         Email: mminser@sjlawcorp.com

**PLAINTIFFS' NOTICE OF MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES;  Case No.: 19-cv-00487-JM-WVG**

- 1 -

P:\CLIENTS\SDEWF\CASES\Ronald Holterhaus\Pleadings\Motions\Motion for Preliminary Injunction.doc